**F I L E D**

**UNITED STATES COURT OF APPEALS**

**June 3, 2005**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

TROY STRINGHAM,

Defendant-Appellant.

No. 04-4079

District of Utah

(D.C. No. 2:03-CR-99-TC)

**ORDER AND JUDGMENT** *

Before **EBEL** , **MURPHY** , and **McCONNELL** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination
of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  This case is
therefore submitted without oral argument.

Troy Stringham pled guilty to one count of bank fraud in violation of 18
U.S.C. § 1344.  The district court sentenced him to 30 months of imprisonment
and 36 months of supervised release.  On appeal, Mr. Stringham challenges the

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

district court's finding of the amount of foreseeable pecuniary harm and he challenges his sentence on the basis of *Blakely v. Washington*, 124 S.Ct. 2531 (2004). We **AFFIRM**.

## I.

Mr. Stringham was a loan officer at Central Bank in Provo, Utah. He and Michael Douros, his coconspirator, developed a plan to defraud Central Bank through a series of loan transactions. Mr. Douros obtained a number of sales contracts with local automobile and recreational vehicle dealerships, submitting each contract to Mr. Stringham as part of a loan application. Although the contracts overstated the actual price of the vehicles by a large margin, Mr. Stringham approved each loan and allowed Mr. Douros to pocket the surplus. From August 2001 through February 2002, Mr. Stringham approved loans totaling over $530,000, of which Mr. Douros received $473,153.84.

Central Bank discovered the fraudulent loans on February 14, 2002. Rather than report the scheme to authorities, the bank developed a plan to allow Mr. Douros to repay the total amount due on the loans, which at that time was over $395,000. The plan allowed Mr. Douros to repay the loans with funds from a line of credit and a term loan with Central Bank as well as with payments from his checking account. However, Mr. Douros failed to repay the line of credit and term loan, and Central Bank was forced to write off over $300,000 in bad debt.

Mr. Stringham was indicted on February 12, 2003, and on August 16, 2003 entered a plea of guilty to one count of bank fraud in violation of 18 U.S.C. § 1344. Bank fraud carries a base offense level of six, U.S.S.G. § 2B1.1(a), and Mr. Stringham falls within criminal history category I. The presentence report recommended, and the district court applied, the following upward adjustments: (1) a twelve-level increase in the offense level based on a loss exceeding $200,000, U.S.S.G. § 2B1.1(b)(1)(G); (2) a two-level increase based on Mr. Stringham's use of sophisticated means to commit the offense, U.S.S.G. § 2B1.1(b)(9)(C); and (3) a two-level increase based on Mr. Stringham's abuse of a position of trust or use of a special skill to commit the offense, U.S.S.G. § 3B1.3. These adjustments, along with a three-level reduction for acceptance of responsibility, resulted in a total offense level of nineteen and a recommended sentence of 30–37 months. The district court sentenced Mr. Stringham to 30 months of imprisonment, 36 months of supervised release, and $383,492.87 in restitution. Mr. Stringham appeals the sentence on the grounds that the district court committed legal error in calculating that the loss exceeded $200,000 and that his sentence violates his Sixth Amendment rights pursuant to *Blakely v. Washington*, 124 S.Ct. 2531 (2004). We consider this latter argument in light of the Supreme Court's ruling in *United States v. Booker*, 125 S.Ct. 738 (2005).

II.

A.

We review a district court's legal determinations under the Guidelines de novo. *United States v. Doe*, 398 F.3d 1254, 1257 (10th Cir. 2005). Mr. Stringham argues that the district court committed an error of law by finding that he was responsible for a loss exceeding $200,000. The district court determined this amount by looking to the amount due on the fraudulent loans on the date the bank detected the offense, which was $408,477.66. The district court then adjusted this amount pursuant to Guidelines commentary by applying loan payments to the principal and adjusting for collateral that was or would be disposed of to determine that the total foreseeable pecuniary harm was $383,492.87. On appeal, Mr. Stringham argues that the district court erred by using the date the bank detected the fraud as the relevant date for calculating the loss. Mr. Stringham contends that the bank incurred no actual losses because after the bank initially discovered the fraud, arrangements were made with Mr. Douros to repay the fraudulent loans by extending him another term loan and allowing him to make payments from a line of credit and his checking account.

Mr. Stringham's argument is inconsistent with the text of Guidelines commentary and the precedent of this Court. The commentary to the relevant guideline states that sentencing courts should reduce losses by:

The money returned, and the fair market value of the property returned and the services rendered, by the defendant or other persons acting jointly with the defendant, to the victim *before the offense was detected*. The time of detection of the offense is the earlier of (I) the time the offense was discovered by a victim or government agency; or (II) the time the defendant knew or reasonably should have known that the offense was detected or about to be detected by a victim or government agency.

U.S.S.G. §2B1.1 cmt.(3)(E)(i) (emphasis added). Nothing in the commentary suggests any exception to the rule that repayment of fraudulent losses after actual or constructive detection of the offense is inconsequential for calculating the amount of loss under §2B1.1. Nor does our precedent permit any exception to this rule. In *United States v. Swanson*, 360 F.3d 1155, 1169 (10th Cir. 2004), we held that it was "irrelevant" that the defendant repaid fraudulent overdrafts. Mr. Stringham argues that the commendable efforts of the bank to help Mr. Douros to repay the fraudulent loans distinguish this case from *Swanson*, but Mr. Stringham does not give any reason to think this distinction is relevant. Indeed, the district court characterized the behavior of Mr. Douros as "a classic case of robbing Peter to pay Paul." Aplt. App. 125. To allow an exception to this rule when a victim of fraud makes a good faith effort to help the perpetrator repay the loss would only encourage more charming guile and sleight of hand from fraudsters and those that aid them. Accordingly, we conclude that the district court did not err in calculating the total foreseeable pecuniary harm.

B.

Mr. Stringham also argues that his sentence violates *Blakely v. Washington*, 124 S.Ct. 2531 (2004), a claim we assess in light of *United States v. Booker*, 125 S.Ct. 738 (2005). Because Mr. Stringham did not raise the *Blakely/Booker* issue below, we review the district court's sentencing decision for plain error. *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (en banc). To establish plain error, Mr. Stringham must demonstrate that the district court (1) committed error, (2) that the error was plain, and (3) that the plain error affected his substantial rights. *United States v. Cotton*, 535 U.S. 625, 631 (2002). If Mr. Stringham meets these three conditions, and if the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings, we may exercise discretion to correct it. *Id.* at 631–32.

There are two types of error pursuant to *Booker*: constitutional error, which occurs when a district court finds facts that mandatorily increase a defendant's sentence beyond that authorized by a jury's verdict or a plea of guilty, and non-constitutional error, which is a consequence of treating the guidelines as mandatory. *See Gonzalez-Huerta*, 403 F.3d at 731–32. Mr. Stringham concedes that he admitted the facts that the district court used to enhance his sentence for use of sophisticated means and abuse of a position of trust, but he maintains that he did not admit that the amount of loss was more than $200,000. Thus, he

asserts constitutional error with respect to the amount of loss and non-constitutional error with respect to the mandatory application of the Guidelines. We agree that these alleged errors are, in fact, error and that the errors are plain. *See id.* We will proceed directly to the fourth prong of plain error analysis because our precedent precludes an exercise of our discretion to remand Mr. Stringham's case to correct either the constitutional or non-constitutional plain error. *See id.* at 736 (skipping the third prong of plain error analysis where the defendant could not carry his burden under the fourth prong). This Court has observed that "[w]hether the district court would simply reimpose the same sentence on remand, or whether instead the sentence 'would likely change to a significant degree if [the case] were returned to the district court for discretionary resentencing,' is one factor to consider in determining whether the defendant can satisfy the fourth plain-error prong." *United States v. Lawrence*, ___ F. 3d ___, 2005 WL 906582 at *12 (10th Cir. Apr. 20, 2005) (quoting *Gonzalez-Huerta*, 403 F.3d at 743–44 (Ebel, J., concurring)) (alteration appears in original).

Mr. Stringham bases his constitutional claim on the district court's finding that the amount of loss was over $200,000. While Mr. Stringham objected to this finding at sentencing, he has not challenged the facts underlying this enhancement either at sentencing or on appeal. For example, at sentencing the court asked Mr. Stringham whether he agreed with the government's account of the amount due on

the loans at the time of detection and Mr. Stringham responded "I have no reason to disbelieve that the—that the amount [sic] set forth there are correct." Aplt. App. 108. Likewise, on appeal Mr. Stringham argues that the amounts of the loans did not appear in his Statement in Advance of Guilty Plea, but he does not claim that the figures used by the district court were incorrect. Thus, there is no reason to suppose that the district court's calculations of loss would be any different on remand.

Under these circumstances, Mr. Stringham fails to show that the error in sentencing seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *See United States v. Magallanez*, ___ F.3d ___, 2005 WL 115591324, *9 (10th Cir. May 17, 2005) (declining to reverse sentence under the fourth prong of plain error where "[n]either at sentencing nor in this Court has [the defendant] pointed to any error in the court's calculations"); *contrast United States v. Dazey*, 403 F.3d 1147, 1178–79 (10th Cir. 2005) (holding that a defendant's challenge to the factual basis of Guideline enhancements during sentencing weighed in favor of exercising discretion to remand).

It is even more difficult for Mr. Stringham to demonstrate that the non-constitutional error in his sentence warrants an exercise of our discretion to remand. We will remand a sentence for correction of non-constitutional *Booker* error only in "those rare cases in which core notions of justice are offended."

*Gonzalez-Huerta*, 403 F.3d at 739. He received a sentence at the bottom of the Guidelines range. The district court did not cite any rationale for imposing a lower sentence nor is there any mitigating evidence in the record to support deviation from the Guidelines range. *See id.* at 738–39 (citing the lack of mitigating evidence as a relevant factor for denying relief under the fourth prong of plain error in a case of non-constitutional *Booker* error); *contrast United States v. Trujillo-Terrazas*, ___ F.3d ___, 2005 WL 880896 at *4–5 (10th Cir. Apr. 13, 2005) (remanding a case of non-constitutional *Booker* error where there was evidence to justify a deviation from the range supplied by the Guidelines). Mr. Stringham's sentence is "within the national norm and there is no record evidence to support a lower sentence." *See Magallanez*, 2005 WL 1155913 at *9. Thus, a remand to correct the non-constitutional component of Mr. Stringham's sentence is highly unlikely to lead to a different result or to improve the fairness of the sentencing calculation.

III.

The judgment of the United States District Court for the District of Utah is **AFFIRMED** .

Entered for the Court,

Michael W. McConnell
Circuit Judge

No. 04-4079, U.S. v. Stringham

Ebel, Circuit Judge, dissenting in part:

Although I agree with most of the majority opinion in this case, I respectfully dissent on the analysis of Mr. Stringham's claim of non-constitutional Booker error. Because the district court sentenced at the bottom of a range that the court perceived to be a mandatory range at the time of sentencing, and because there is nothing in this record to contradict the inference that the district court therefore felt constrained in how low it could go in sentencing Mr. Stringham, I believe the third and fourth prongs of Olano have been satisfied. I would remand for resentencing under Booker.